No. 22-1279

---

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

---

CARLTON & HARRIS CHIROPRACTIC, INC., *et al.*

*Appellant*

v.

PDR NETWORK, LLC, PDR DISTRIBUTION, LLC,
PDR EQUITY, LLC, *et al.*

*Appellees*

---

Appeal from the United States District Court
for the Southern District of West Virginia (at Huntington)
District Court No. 3:15-cv-14887
The Honorable Robert C. Chambers, Chief Judge Presiding

---

## BRIEF OF APPELLANT

---

Glenn L. Hara                         D. Christopher Hedges
ANDERSON + WANCA            CALDWELL LUCE DITRAPANO
3701 Algonquin Rd., Suite 500   500 Randolph Street
Rolling Meadows, IL  60008       Charleston, WV  25302
Telephone:  (847) 368-1500        Telephone:  (304) 400-6558

*ATTORNEYS FOR APPELLANT*

*ORAL ARGUMENT REQUESTED*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. <u>22-1279</u>      Caption: <u>Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC, et al.</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Carlton & Harris Chiropratic, Inc.</u>
(name of party/amicus)

_____

 who is <u>           Appellant           </u>, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.      Is party/amicus a publicly held corporation or other publicly held entity?      ☐YES ☑NO


2.      Does party/amicus have any parent corporations?      ☐YES ☑NO
        If yes, identify all parent corporations, including all generations of parent corporations:


3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?      ☐YES ☑NO
        If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: s/ Glenn L. Hara          Date:    3/29/2022

Counsel for: Appellant

- 2 -

Print to PDF for Filing

## **<u>TABLE OF CONTENTS</u>**

Introduction ........................................................................................1

Jurisdictional Statement .....................................................................2

Statement of Issues.............................................................................2

Statement of the Case.........................................................................3

Summary of Argument........................................................................7

Argument.............................................................................................9

I.     The standard of review is de novo..................................................9

II.    The Fax is an "advertisement" under the plain language of the TCPA, without regard to the FCC's interpretation...................................9

III.   In the alternative, the FAC adequately alleges the Fax is an "advertisement" under the free-goods-or-services rule ............................. 14

IV.   In the alternative, the FAC adequately alleges the Fax is a pretext to further advertising ..........................................................17

Conclusion .......................................................................................22

i

## TABLE OF AUTHORITES

**Cases**

*Able Home, LLC v. Onsite Healthcare, Inc.*,
2017 WL 2152429 (N.D. Ill. May 17, 2017)......................................................13

*Addison Automatics, Inc. v. RTC Group, Inc.*,
2013 WL 3771423 (N.D. Ill. July 16, 2103).....................................................19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................................9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................................9

*Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC*,
2016 WL 5799301 (S.D.W.Va. Sept. 30, 2016)..............................................5, 16–17

*Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC*,
883 F.3d 459 (4th Cir. 2018) .........................................................................*passim*

*Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC*,
982 F.3d 258 (4th Cir. 2020) ....................................................................1, 6, 8, 15

*Drug Reform Coordination Network, Inc. v. Grey House Publ'g, Inc.*,
106 F. Supp. 3d 9 (D.D.C. 2015)....................................................................21

*Friedman v. Heckler*,
765 F.2d 383 (2d Cir. 1985) ............................................................................15

*Green v. Time Ins., Co.*,
629 F. Supp. 2d 834 (N.D. Ill. 2009)...............................................................13

*Harbourt v. PPE Casino Resorts Maryland, LLC*,
820 F.3d 655 (4th Cir. 2016) ..........................................................................9

# <u>TABLE OF AUTHORITES</u>

**Cases**

*Gager v. Dell Fin. Servs., LLC*,
    727 F.3d 265 (3d Cir. 2013) ..............................................................11,19

*In re Total Realty Mgmt., LLC*,
    706 F.3d 245 (4th Cir. 2013) .......................................................... 12

*Matthew N. Fulton, D.D.S., P.C. v. Enclarity*,
    907 F.3d 962 (6th Cir. 2020) ............................................................13

*Mims v. Arrow Fin. Servs., LLC*,
    132 S. Ct. 740 (2012).....................................................................2

*N. Suburban Chiropractors Clinic v. Merck & Co.*,
    2013 WL 5170754 (N.D. Ill. Sept. 13, 2013)...................................19

*PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*,
    139 S. Ct. 2051 (2019)...................................................... 1, 6, 15, 17

*Phillip Long Dang, D.C., P.C. v. XLHealth Corp.*,
    2011 WL 553826 (N.D. Ga. Feb. 7, 2011) ..................................... 19

*Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*,
    950 F.3d 959 (7th Cir. 2020) ....................................................... 8, 11

*Physicians Healthsource, Inc. v. Alma Lasers, Inc.*,
    2012 WL 4120506 (N.D. Ill. Sept. 18, 2012).................................. 19

*Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharm., Inc.*,
    847 F.3d 92 (2d Cir. 2017)........................................ 3, 9, 11, 15, 17–22

*Physicians Healthsource, Inc. v. Janssen Pharm., Inc.*,
    2015 WL 3827579 (D. N.J. June 19, 2015)....................................22

*Physicians Healthsource, Inc. v. Stryker Sales Corp.*,
    65 F. Supp. 3d 482 (W.D. Mich. 2015) .................................... 18, 21

# TABLE OF AUTHORITES

## Cases

*PSINet, Inc. v. Chapman*,
 362 F.3d 227 (4th Cir. 2004) ...........................................................12

*Russell v. Absolute Collection Servs., Inc.*,
 763 F.3d 385 (4th Cir. 2014) ...........................................................11

*Sandusky Wellness Ctr., LLC v. Medco Health Solutions, Inc.*,
 788 F.3d 218 (6th Cir. 2015) ...................................................... 12–14

*Sierra Club v. U.S. Army Corps of Eng'rs*,
 909 F.3d 635 (4th Cir. 2018) ...........................................................16

*Simon v. RadNet Mgmt, Inc.*,
 2015 WL 13653873 (C.D. Cal. Jan. 14, 2015) ................................13

*Skidmore v. Swift & Co.*,
 323 U.S. 134 (1944) ............................................... 1, 3, 7, 8, 15–17

*St. Louis Heart Ctr., Inc. v. Forest Pharms., Inc.*,
 2013 WL 1076540 (E.D. Mo. Mar. 13, 2013) ................................19

## Statutes

28 U.S.C. § 1291 ...............................................................................2
28 U.S.C. § 1331 ...............................................................................2
28 U.S.C. § 2342(1) ..........................................................................6
47 U.S.C. § 227(a)(5) ................................................................*passim*
47 U.S.C. § 227(b)(1)(C) ........................................................1, 4, 10
47 U.S.C. § 227(b)(2) ......................................................................14
47 U.S.C. § 227(b)(3) ........................................................................2

# <u>TABLE OF AUTHORITES</u>

**Rules & Regulations**

47 C.F.R. § 64.1200(a)(4) ................................................................4

Fed. R. Civ. P. 12(b)(6) ...................................................................2

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
21 FCC Rcd. 3787 (rel. Apr. 6, 2006) .....................................4–5, 14–17

**Other Authorities**

Antonin Scalia & Bryan Garner, *Reading Law* 149 (2012)................................... 12

Merriam-Webster, *at* http://www.merriam-webster.com/dictionary/advertise ...... 10

## **Introduction**

This is a putative class action alleging that Defendants, PDR Network, LLC, PDR Distribution, LLC, and PDR Equity, LLC ("PDR Network"), sent "unsolicited advertisements" to Plaintiff, Carlton & Harris Chiropractic, Inc. ("Carlton & Harris"), and thousands of others via facsimile (or "fax") in violation of the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227(b)(1)(C). This Court previously vacated the district court's dismissal for failure to state a claim, holding that the fax attached to the initial Complaint offering a free copy of PDR Network's 2014 eBook was plausibly an "advertisement" under the TCPA, as defined by 47 U.S.C. § 227(a)(5), and as interpreted by the Federal Communications Commission ("FCC"). *Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC*, 883 F.3d 459 (4th Cir. 2018) ("*PDR Network II*").

After the Supreme Court vacated that decision on the basis that the FCC's interpretation may not technically be "binding," *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051 (2019) ("*PDR Network III*"), this Court held that the FCC's interpretation was an "interpretive rule" and remanded to the district court to decide whether it was due deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). *Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC*, 982 F.3d 258, 265 (4th Cir. 2020) ("*PDR Network IV*"). On remand, the

district court once again dismissed the First Amended Complaint, holding that the Fax was not plausibly an "advertisement" because it did not "offer something for sale" to Carlton & Harris. (A046). As argued below, this Court should review that ruling de novo and once again reverse the district court's dismissal.

**Jurisdictional Statement**

The United States District Court for the Southern District of West Virginia had subject-matter jurisdiction of this action under 28 U.S.C. § 1331. The Supreme Court held in *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012), that federal and state courts share concurrent jurisdiction over claims arising under the TCPA, 47 U.S.C. § 227(b)(3).

This Court has jurisdiction because Carlton & Harris is appealing from the district court's order dismissing the First Amended Complaint ("FAC") for failure to state a claim under Fed. R. Civ. P. 12(b)(6), which is a "final decision" under 28 U.S.C. § 1291.

**Statement of Issues**

1.    Whether the district court erred in finding Carlton & Harris did not adequately allege that the Fax is an "advertisement" on its face, where it advertises (*i.e.*, "makes known") the "quality" of a "good," 47 U.S.C. § 227(a)(5), and where, contrary to the district court's reasoning, the plain language of the statute contains no requirement that a fax must "offer something for sale" to be an "advertisement."

2

2.      Whether the district court erred by refusing to accord *Skidmore* deference to the FCC's free-goods-or-services rule, where this Court held in *PDR Network II*, 883 F.3d at 468, that the rule is "reasonable" and "advances the purpose of the underlying statute by protecting consumers from junk faxes" and "helps would-be violators avoid inadvertent liability by eliminating the need for a case-by-case determination of whether a fax is indeed a free offer, or merely a pretext for something more."

3.      Whether the district court erred in finding the FAC did not plausibly allege the Fax is a "pretext" to further advertising, where the only other court of appeals to address this issue held that, at the pleading stage, a fax offering free goods or services is "presumed" to be an advertisement, and that requiring the plaintiff to allege details known only to the defendant would "impede the purposes of the TCPA," given the "remedial" nature of the statute. *Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharm., Inc.*, 847 F.3d 92, 95–96 (2d Cir. 2017) ("*Boehringer*").

## Statement of the Case

On November 10, 2015, Carlton & Harris, a chiropractic clinic in West Virginia, filed this action against PDR Network under the TCPA, with the operative FAC filed on March 24, 2021. (A014). Carlton & Harris alleged that PDR Network sent Carlton & Harris and a class of others "unsolicited

advertisements" via fax in violation of the TCPA, 47 U.S.C. § 227(b)(1)(C), and

the implementing FCC regulations, 47 C.F.R. § 64.1200(a)(4), including a fax on

or about December 17, 2013, which is attached to the FAC as Exhibit A (the

"Fax"). (A031).

The Fax is addressed to "Practice Manager" from "PDR Network" and

offers a "FREE 2014 *Physicians Desk Reference* eBook." (*Id.*) The Fax states that

the 2014 PDR eBook contains the "[s]ame trusted, FDA-approved full prescribing

information . . . [n]ow in a new, convenient digital format." (*Id.*) The Fax states,

"[f]or additional information, please contact PDR Network at (866) 925-5155 or

customerservice@pdr.net." (*Id.*) The Fax states: "To opt-out of delivery of

clinically relevant information about healthcare products and services from PDR

via fax, call 866-469-8327. You are receiving this fax because you are a member

of the PDR Network." (*Id.*)

PDR Network moved to dismiss for failure to state a claim, arguing the Fax

was not an "advertisement" under 47 U.S.C. § 227(a)(5) because it does not offer

any goods or services "for purchase or sale." (Doc. 19, Defs.' Mem. Supp. Mot.

Dismiss at 7). In response, Plaintiff pointed to an FCC order interpreting

"advertisement" to mean that "facsimile messages that promote goods or services

even at no cost, such as free magazine subscriptions, catalogs, or free consultations

or seminars, are unsolicited advertisements under the TCPA's definition." *In re*

*Rules & Regulations Implementing the Tel. Consumer Protection Act of 1991;*

*Junk Fax Prevention Act of 2005*, Report & Order & Third Order on

Reconsideration, 21 FCC Rcd. 3787, 3814, ¶ 52 (FCC Apr. 6, 2006) (hereinafter

"2006 Order"). Plaintiff argued the FCC reasonably concluded that faxes offering

"free goods or services," including "free publications," are "presume[d]" to

"describe the 'quality of any property, goods, or services'" under 47 U.S.C.

§ 227(a)(5) because they are "[i]n many instances" and "often" a "pretext" to

further advertising or part of an "overall marketing campaign . . . ." (*Id.*)

On September 30, 2016, the district court granted PDR Network's motion to

dismiss. (Doc. 33, Mem. Op. & Order, *Carlton & Harris Chiropractic, Inc. v. PDR

Network, LLC*, No. CV 3:15-14887, 2016 WL 5799301, at *1 (S.D.W.Va. Sept. 30,

2016) ("*PDR Network I*")). First, the Court held that, because the statutory

definition of "advertisement" is "clear," the "FCC's interpretation of the TCPA is

not due 'substantial deference'" under *Chevron U.S.A., Inc. v. NRDC*, 467 U.S.

837, 843 (1984), and that "[t]he Court is not obliged to defer to the FCC's

interpretation of an unambiguous statute." (*Id.* at 7). Second, the Court interpreted

the 2006 Order to mean that a fax must "promote" free goods or services to be an

advertisement, and since *promote* has "an explicit commercial nature," the FCC

rule therefore means that a fax promoting free goods or services is an

advertisement only if it *also* aims "through those goods and services" to sell

something else that is not free. (*Id.*) Plaintiff timely appealed to this Court.

On February 23, 2018, this Court issued its decision in *PDR Network II*, 883

F.3d at 459. The Court held (1) that the Hobbs Act, 28 U.S.C. § 2342(1), which

vests "exclusive jurisdiction" to "determine the validity of" a final order of the

FCC "requires a district court to apply FCC interpretations of the TCPA," and (2)

that the unambiguous meaning of the 2006 Order is "this simple rule: faxes that

offer free goods and services are advertisements under the TCPA." *Id.* at 467. PDR

Network petitioned the Supreme Court for certiorari, and the Court granted review

"limited to the following question: Whether the Hobbs Act required the district

court in this case to accept the FCC's legal interpretation of the Telephone

Consumer Protection Act." 139 S. Ct. 478 (2018).

On June 20, 2019, the Supreme Court issued its decision in *PDR Network*

*III*, 139 S. Ct. at 2051. The Court did not answer the question presented, instead

remanding to this Court on two "preliminary" questions which it held "may" affect

the outcome: (1) whether the 2006 FCC Rule is an "interpretive rule" or a

"legislative rule"; and (2) whether PDR Network had a "prior, adequate, and

exclusive" opportunity for judicial review. *Id.*

On December 7, 2020, this Court issued its decision in *PDR Network IV*,

982 F.3d at 265, holding that the free-goods-or-services rule is an "interpretive

rule," and remanding for the district court to determine whether it is due deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).

On remand, the district court granted Plaintiff leave to file the FAC adding new allegations, including allegations designed to show (1) that the Fax is an "advertisement" on its face; and (2) that the Fax is a "pretext" to further advertising. (Doc. 82). PDR Network filed its Motion to Dismiss the FAC on April 21, 2021. (Doc. 84).

On February 8, 2022, the district court dismissed the FAC for failure to state a claim solely on the basis that the Fax is not an "advertisement" because it does not "offer something for sale." (A046). On March 8, 2022, Plaintiff timely appealed. (A048). For the reasons below, this Court should review the district court's dismissal de novo and reverse.

## Summary of Argument

The district court erred in dismissing the FAC for three main reasons. First, the Fax is an "advertisement" under the plain language of the TCPA, 47 U.S.C. § 227(a)(5), because it constitutes "material advertising the . . . quality of" a "good" (*i.e.*, the 2014 eBook). The Fax states that the eBook is "trusted," "new," and "convenient," all of which are claims about the "quality" of PDR Network's eBook. There is no requirement in the words Congress chose to use in the statute that a fax must "offer something for sale" to the recipient in order to qualify as an

"advertisement," and the district court erred in reading such a requirement into the statute, especially given that the TCPA is "a remedial statute" that the courts "liberally construe in favor of consumer protection." *Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, 950 F.3d 959, 967 (7th Cir. 2020).

Second, the district court erred by refusing to accord *Skidmore* deference to the FCC's free-goods-or-services rule. This Court held in *PDR Network II*, 883 F.3d at 468, that the rule is "reasonable" and "advances the purpose of the underlying statute," while also helping fax advertisers "avoid inadvertent liability" by making clear that faxes offering free goods or services must comply with the rules for sending fax advertisements.

Third, the district court erred by ruling that Carlton & Harris failed to adequately plead that the Fax was a "pretext" to further advertising, where the Fax itself urges recipients to contact "customerservice@pdr.net," refers to other "healthcare products and services from PDR," and states that recipients will receive future faxes regarding PDR Network's "products and services" unless they "opt out," and where the FAC alleges that "the amount of money [PDR Network] receives turns on how many copies of the *Physicians' Desk Reference* it distributes." *PDR Network II*, 883 F.3d at 468. This Court should follow the only other court of appeals to rule on this issue and hold that a fax offering free goods or services is "presumed" to be an advertisement, and that requiring the plaintiff to

8

allege details known only to the defendant would "impede the purposes of the TCPA." *Boehringer*, 847 F.3d at 95–96.

## Argument

### I.  The standard of review is de novo.

This Court reviews a dismissal for failure to state a claim de novo. *Harbourt v. PPE Casino Resorts Maryland, LLC*, 820 F.3d 655, 658 (4th Cir. 2016). Dismissal is appropriate only if the defendant demonstrates that the plaintiff does not even have a "plausible" claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). There must be no "reasonable expectation that discovery will reveal evidence" to support the plaintiff's claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). It is not enough that the court suspects the plaintiff will ultimately "fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Id.* at 563 n.8. The plaintiff "need not 'forecast' evidence sufficient to prove" a claim. *Harbourt*, 820 F.3d at 658.

### II.  The Fax is an "advertisement" under the plain language of the TCPA, without regard to the FCC's interpretation.

The TCPA allows a fax advertiser to send an "unsolicited advertisement" by facsimile only if (1) the sender has an "established business relationship" with the recipient; (2) the sender obtained the fax number in a permissible way, including the "voluntary communication" of the number by the recipient; and (3) the fax contains a compliant opt-out notice informing the recipient of how to stop future

9

fax advertisements. 47 U.S.C. § 227(b)(1)(C). The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services." 47 U.S.C. § 227(a)(5). This language unambiguously covers the Fax in this case.

First, a common dictionary definition of the word "advertise" is as follows:

> 1: to make something known to : NOTIFY
> 2a: to make publicly and generally known
> //*advertising* their readiness to make concessions
> b: to announce publicly especially by a printed notice or a broadcast
> //a poster *advertising* forthcoming events
> c: to call public attention to especially by emphasizing desirable qualities so as to arouse a desire to buy or patronize : PROMOTE

Merriam-Webster, *at* http://www.merriam-webster.com/dictionary/advertise. The word "advertise" is plainly not limited to an attempt to sell something for a profit. The Fax in this case "make[s] known" and "call[s] public attention" to the 2014 eBook and "emphasizes" its desirable qualities. It is therefore, at least plausibly at the pleading stage for purposes of a motion to dismiss for failure to state a claim, an "advertisement" for the 2014 eBook.

Second, the Fax advertises (*i.e.*, makes known) the "quality" of the 2014 eBook by stating it is "trusted," "new," "convenient," and "FREE." (A031). The Fax itself also states that it constitutes "information about healthcare products and services from PDR," and that the recipient will receive future faxes regarding PDR Network's "healthcare products and services" unless the recipient "opts out." (*Id.*)

The Fax advertises the "quality" of a "good," and is therefore an advertisement under the plain language of the statute.

Judge Thacker's dissenting opinion in the first appeal in this case concluded that the statutory definition of unsolicited advertisement is "ambiguous" with respect to whether a fax offering free goods or services is an "advertisement" because "(1) 'advertis[ing]' does not definitely implicate a profit seeking motive; and (2) 'commercial' may or may not modify 'quality' . . . ." *PDR Network II*, 883 F.3d at 472 (Thacker, J., dissenting). To the extent the Court agrees that the statute is ambiguous, it should resolve any ambiguity in Carlton & Harris's favor because the TCPA is "remedial statute" that "should be construed to benefit consumers." *Boehringer*, 847 F.3d at 96; *Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, 950 F.3d 959, 967 (7th Cir. 2020) ("The TCPA is a remedial statute that we must liberally construe in favor of consumer protection."); *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013). This Court has held outside the TCPA context that a "remedial statute" is "to be construed liberally" in favor of those it is designed to protect. *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 393 (4th Cir. 2014). If the Court finds the definition of "advertisement" ambiguous with respect to whether the Fax is an "advertisement," it should interpret it in favor of Carlton & Harris and reverse the district court's dismissal.

The district court held that the word "commercial" in the statutory definition must modify both "availability" and "quality," reasoning that "[w]hen there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier normally applies to the entire series." (A038 (quoting Antonin Scalia & Bryan Garner, *Reading Law* 149 (2012)). Thus, as the district court would have it, the term "unsolicited advertisement" means something that advertises either (1) the "*commercial* availability" of property, goods, or services or (2) the "*commercial* quality" of property, goods, or services.

But this construction is not "straightforward" at all. The term "commercial availability" means availability to be bought or sold in commerce. The term "commercial quality," in the district court's construction, means the "quality of being commercially available," which means the same thing as "commercial availability," making the statute redundant. *Cf. In re Total Realty Mgmt., LLC*, 706 F.3d 245, 254 (4th Cir. 2013) (holding the Court "seek[s] to give meaning to every word and 'reject constructions that render a term redundant'") (quoting *PSINet, Inc. v. Chapman*, 362 F.3d 227, 232 (4th Cir. 2004)).

The district court relied heavily on the Sixth Circuit's decision in *Sandusky Wellness Ctr. LLC v. Medco Health Sols., Inc.*, 788 F.3d 218 (6th Cir. 2015), but it fundamentally misconstrued the case. (A039, A043, A045). First, unlike the procedural posture of this instant case, *Sandusky* was decided on summary

judgment, and the Court stated that "record evidence" showed the defendant was

merely a "pharmacy-benefits manager" that sent faxes stating which prescription

drugs were on its "formulary," and thus covered by insurance, and the faxes were

"not sent with hopes to make a profit, directly or indirectly," so they lacked the

profit motive necessary to constitute an advertisement in the Sixth Circuit's view.

*Id.* at 222. This case, in contrast, ended at the pleading stage, with no "record" to

speak of, and neither Carlton & Harris nor the district court has ever even seen the

2014 eBook advertised in the Fax.

Moreover, *Sandusky* recognized that, "to be sure, a fax need not be an

explicit sale offer to be an ad," and that "[i]t's possible for an ad to promote a

product or service that's for sale without being so overt, as in the free-seminar

example," noting that "[t]he best ads sometimes do just that." *Id.* at 225.[1] The court

also held a fax can be an ad even if it is "an indirect commercial solicitation" or

---

[1] *See also Matthew N. Fulton, D.D.S., P.C. v. Enclarity*, 907 F.3d 962 (6th Cir. 2020) (reversing dismissal, stating *Sandusky* "recognizes that the fax 'need not be an explicit sale offer,' that the 'best ads' are sometimes not 'so overt,' and that TCPA coverage is accorded where the fax is 'an indirect commercial solicitation, or a pretext for' such a solicitation'"); *Simon v. RadNet Mgmt, Inc*., 2015 WL 13653873, at *3 (C.D. Cal. Jan. 14, 2015) (TCPA "does not require that an unwanted and uninvited fax make an overt sales pitch to its recipient in order for a cause of action to exist") (citing *Green v. Time Ins., Co*., 629 F. Supp. 2d 834, 837 (N.D. Ill. 2009); *Able Home, LLC v. Onsite Healthcare, Inc*., 2017 WL 2152429, at *2 (N.D. Ill. May 17, 2017)).

merely a "pretext for a commercial solicitation." *Id.* What is important, in the Sixth Circuit's formulation, is that the defendant "have profit as an aim." *Id.* at 222.

In this case, the FAC alleges that "Defendants benefit or profit from the sale of the 'healthcare products and services' referred to" in the Fax (FAC ¶ 18), and that "Defendants stand to profit when a provider accepts a free copy" of the 2014 eBook PDR Network, which this Court held was a "plausible" inference in *PDR Network II*, 883 F.3d at 468. (FAC ¶ 20). That should be sufficient to defeat a motion to dismiss, even under the *Sandusky* standard.

In sum, the FAC adequately alleged that the Fax is an "advertisement" under the statutory definition, even without reliance on the free-goods-or-services rule in the FCC's 2006 Order, and this Court should reverse the district court's dismissal.

## III. In the alternative, the FAC adequately alleges the Fax is an "advertisement" under the free-goods-or-services rule.

In the 2006 Order, the FCC interpreted "advertisement" to mean that a fax offering free goods or services is "presume[d]" to "describe the 'quality of any property, goods, or services.'" 2006 Order ¶ 52 (quoting 47 U.S.C. § 227(a)(5)). The FCC is the agency tasked with "implement[ing]" and enforcing the TCPA. *See* 47 U.S.C. § 227(b)(2). The FCC's conclusion that it is reasonable to presume that faxes offering free goods or services promote the "quality" of goods or services within the meaning of 47 U.S.C. § 227(a)(5) is based on the agency's experience in interpreting and enforcing the TCPA and should be accorded deference.

14

Under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), "the weight that courts afford an agency's interpretation 'depend[s] upon the thoroughness evident in [the agency's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade.'" *PDR Network IV*, 982 F.3d at 264. This Court held in *PDR Network II* that it was "reasonable" for the FCC to classify faxes offering free goods or services as "advertisements." 883 F.3d at 468. The Court agreed with the concurring opinion in *Boehringer*, 847 F.3d at 100 (Leval, J., concurring),[2] that the rule is "a prophylactic presumption" that a fax offering free goods or services is an advertisement. *Id.* at 467. The Court held that "prophylactic rules are neither uncommon nor unlawful," and "cannot, and need not, operate with mathematical precision." *Id.* at 467–68 (quoting *Friedman v. Heckler*, 765 F.2d 383, 388 (2d Cir. 1985)). The Court held that "[a] per se rule advances the purpose of the underlying statute by protecting consumers from junk faxes," and also "helps would-be violators avoid inadvertent liability by eliminating the need for a case-by-case determination of whether a fax is indeed a free offer, or merely a pretext for something more." *Id.* at 468.

---

[2] As discussed below, the majority in *Boehringer* adopted a rebuttable "presumption" that a fax offering free goods or services relating to the sender's business is an advertisement. *Boehringer*, 847 F.3d at 93. If the Court adopts the Second Circuit's presumption, the district court's dismissal must be reversed.

The Court found that *PDR Network I* took "too narrow a view of the concepts of commercial activity and promotion, and ignore[d] the reality of many modern business models," and that "[t]his case illustrates why the FCC may have decided to implement so broad a rule," where the case was dismissed with no discovery, where "few details of PDR Network's business model have emerged," and where "nothing in the record suggests that PDR Network is a charity" with a non-commercial motive for sending the Fax. *Id.* Nothing has changed since this Court's decision in *PDR Network II*, and the district court's dismissal was once again erroneous.

The district court declined to defer to the FCC rule on the basis that it is "devoid of any statutory analysis," citing *Sierra Club v. U.S. Army Corps of Eng'rs*, 909 F.3d 635, 645 (4th Cir. 2018). (A041). That is incorrect. The ruling analyzed the statutory text and found that it is "reasonable to presume that such messages describe the 'quality of any property, goods, or services,'" quoting the plain language of the statute. (2006 Order ¶ 52 (quoting 47 U.S.C. § 227(a)(5)). That the FCC found the language clear and easy to apply in a few paragraphs does not mean it is "devoid" of analysis. Moreover, even if the statute was ambiguous on the basis that "(1) 'advertis[ing]' does not definitely implicate a profit seeking motive; and (2) 'commercial' may or may not modify 'quality,'" *PDR Network II*, 883 F.3d at 472 (Thacker, J., dissenting), the FCC resolved that ambiguity in a

reasonable way by finding that free-goods-or-services faxes advertise the "quality" of property, goods, or services (not their "commercial availability"), and are therefore "presume[d]" to be advertisements. (2006 Order ¶ 52).

In sum, if the Court applies the FCC's 2006 Order, it should hold that it is entitled to *Skidmore* deference and requires reversal of the district court's dismissal.

## IV.   In the alternative, the FAC adequately alleges the Fax is a pretext to further advertising.

The Second Circuit's decision in *Boehringer*, 847 F.3d at 101, is the only circuit court of appeals decision, other than this Court's decisions in *PDR Network II* and *PDR Network IV,* involving a fax offering "free goods or services."[3] In *Boehringer*, the Second Circuit reversed the district court's dismissal of an action involving a "free seminar" fax, emphasizing that, at the motion to dismiss phase, a plaintiff need only plausibly allege a commercial pretext, not actually show it, and further noting that a requirement of more specificity would "impede the purposes of the TCPA," given the "remedial" nature of the statute. *Id.* at 95–96. Even though the fax did not indicate that the free seminar would feature a discussion of

---

[3] *PDR Network I* relied on the subsequently-reversed district court decision in *Boehringer* in granting PDR Network's initial motion to dismiss, citing it for the proposition that "where the sender of an unsolicited fax had nothing to sell, even if offering a good or service, the fax was not an advertisement." *PDR Network I*, 2016 WL 5799301, at *3.

the defendant's drug, the Second Circuit found sufficient the allegation that the defendant was a for-profit entity that sent a fax on a subject that "relate[d] to [its] products or services," which led to "a plausible conclusion that the fax had the commercial purpose of promoting those products or services" sufficient to defeat a motion to dismiss. *Id.*

The Second Circuit held the defendant could rebut this "presumption" at summary judgment to show the fax was not a "pretext" or part of an "overall marketing campaign," but only after discovery into, for example, "testimony of the dinner meeting participants," along with "the meeting's agenda, transcript, presentation slides, speaker list, or any internal emails or correspondences discussing the meeting." *Id.* at 97. The court held it would not "put on evidentiary blinders in deciding whether a particular fax amounts to an advertisement," and instead looks "beyond the four corners of the fax" in deciding whether a fax promoting "free goods or services" is an advertisement. *Id.* (quoting *Physicians Healthsource, Inc. v. Stryker Sales Corp.*, 65 F. Supp. 3d 482, 492 (W.D. Mich. 2014)).

What a district court *cannot* do, the Second Circuit held, is require a plaintiff suing on a free-seminar fax "to plead specific facts alleging that specific products or services would be, or were, promoted at the free seminar." *Id.* at 96. Such a requirement, the court held, "would impede the purposes of the TCPA," which is

"a remedial statute" that "should be construed to benefit consumers." *Id.* (quoting

*Gager*, 727 F.3d at 271). The court noted that "[i]t is also possible that [the

defendant] used the seminar to advertise *other* drugs or services in its inventory"—

besides the HDSS drug—"which would certainly support finding a violation of the

TCPA." *Id.* at 97.

The Second Circuit's standard is consistent with other courts that have

denied motions to dismiss for failure to state a claim at the pleading stage on a fax

offering free goods or services. *See Physicians Healthsource, Inc. v. Alma Lasers,

Inc.*, 2012 WL 4120506, at *2 (N.D. Ill. Sept. 18, 2012) (denying motion to

dismiss, holding "faxes promoting a free seminar may constitute an 'unsolicited

advertisement' since free seminars are often a pretext to market products or

services"); *Addison Automatics, Inc. v. RTC Group, Inc.*, 2013 WL 3771423, at *2

(N.D. Ill. July 16, 2103) (denying motion to dismiss because "free seminars are

often a pretext to market products or services"); *St. Louis Heart Ctr., Inc. v. Forest

Pharms., Inc.*, 2013 WL 1076540, at *4 (E.D. Mo. Mar. 13, 2013) (denying motion

to dismiss on free-seminar fax); *N. Suburban Chiropractors Clinic v. Merck & Co.*,

2013 WL 5170754, at *3 (N.D. Ill. Sept. 13, 2013) (same). In *Phillip Long Dang,

D.C., P.C. v. XLHealth Corp.*, 2011 WL 553826, at *4 (N.D. Ga. Feb. 7, 2011), the

court decided a free-seminar fax was not an advertisement at summary judgment

following discovery.

As in *Boehringer*, the Fax promoting the 2014 e-Book "relates to [PDR's] business." The Fax itself asks recipients to contact "customerservice@pdr.net" for additional information and refers to "healthcare products and services from PDR" and states that recipients will continue receiving faxes regarding PDR Network's "products and services" unless they "opt out." (A031). And, like the defendant in *Boehringer*, PDR Network is a for-profit enterprise, stating in the materials on which it sought judicial notice in the district court that "PDR delivers innovative health knowledge products and services," describing PDR as "the leading provider of behavior-based prescription management programs," "event-driven and clinically relevant healthcare messaging through its patented process," and stating that "[t]he **Physicians' Desk Reference®** suite of services provides healthcare professionals multichannel access to important drug information; the PDR®, the most recognized drug information reference available in the U.S.; interactive drug information services for EHR/EMR systems; digital communication services; PDR.net®; and mobilePDR®." (Doc. 18-1).

Although there has been no discovery in this case, it is reasonable at the pleading stage to presume, as the Second Circuit did, that for-profit businesses do not send offers of free goods and services "for no business purpose." *Boehringer*, 847 F.3d at 95. Because the Fax "relates to" PDR Network's for-profit business, if this Court adopts the Second Circuit's rationale in *Boehringer*, the Fax would be

20

presumed to at least "plausibly" be an "advertisement" at the pleading stage sufficient to defeat a motion to dismiss. *Id.* That would be consistent with the Court's ruling in the first appeal that it is "certainly plausible that the amount of money [PDR] receives turns on how many copies of the *Physicians' Desk Reference* it distributes." *PDR Network II*, 883 F.3d at 468.

Just as the plaintiff in *Boehringer* could not be expected to know what transpired at the free seminar without discovery, Carlton & Harris cannot reasonably be expected to know what is contained in the 2014 eBook offered in the Fax, which counsel was unable to find publicly available. And just as the plaintiff in *Boehringer* was entitled to "testimony of the dinner meeting participants," along with "the meeting's agenda, transcript, presentation slides, speaker list, or any internal emails or correspondences discussing the meeting," under the Second Circuit standard, Carlton & Harris would be entitled to discovery into the circumstances behind the sending of the Fax and the contents of the 2014 eBook.

The *Boehringer* court agreed with *Stryker*, 65 F. Supp. 3d at 492, that a court should not "put on evidentiary blinders in deciding whether a particular fax amounts to an advertisement," and should instead look "beyond the four corners of the fax" in deciding whether a fax promoting "free goods or services" is an advertisement. *Id.* at 97. That inquiry cannot be accomplished without some discovery. *See also Drug Reform Coordination Network, Inc. v. Grey House*

*Publ'g, Inc.*, 106 F. Supp. 3d 9, 15 (D.D.C. 2015) (denying motion to dismiss where fax was not an "advertisement" on its face, but "[i]t remains for discovery to determine whether the Fax was in fact 'part of an overall campaign'"). Carlton & Harris has had no discovery into such relevant topics as who decided to send the Fax, who designed the Fax, or what geographic regions it was sent to. *See Physicians Healthsource, Inc. v. Janssen Pharm., Inc.*, 2015 WL 3827579, at *1, *4 (D. N.J. June 19, 2015) (denying summary judgment on fax that appeared to be purely "informational" on its face, where evidence obtained in discovery showed it was created and sent by the "marketing department," raising a genuine issue into "whether there is an advertising intent" behind the faxes).

In sum, even if the Court finds that the 2006 Order creates a rebuttable presumption that faxes offering free goods or services are "advertisements" under *Boehringer*, the district court's dismissal should be reversed.

## Conclusion

For the foregoing reasons, the Court should reverse the district court's dismissal for failure to state a claim and remand for further proceedings.

Date:  May 9, 2022                        Respectfully submitted,

                                          CARLTON & HARRIS
                                          CHIROPRACTIC, INC.

                                          /s/Glenn L. Hara

Glenn L. Hara
Anderson + Wanca
3701 Algonquin Road, Suite 500
Rolling Meadows, IL  60008
Telephone:  (847) 368-1500
Facsimile:   (847) 368-1501
ghara@andersonwanca.com

D. Christopher Hedges
Caldwell Luce diTrapano
500 Randolph St.
Charleston, WV  25302
Telephone:  (304)-343-4323
Facsimile:   (304)-344-3684
chedges@cldlaw.com